UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO MARQUES SMITH,

                    Plaintiff,

        v.                                          Case No. 21-cv-109-pp

SCOTT ECKSTEIN, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING
COMPLAINT UNDER 28 U.S.C. §1915A**

Antonio Marques Smith, who is in custody at the Wisconsin Secure
Program Facility and is representing himself, filed a complaint under 42 U.S.C.
§1983, alleging that the defendants violated his constitutional rights when he
was confined at the Green Bay Correctional Institution. This decision resolves
the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt.
no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee
       (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the
plaintiff was in custody when he filed his complaint. See 28 U.S.C. §1915(h).
The PLRA allows the court let an incarcerated plaintiff to proceed with his case
without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds
exist, the incarcerated person must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 26, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $21.32. Dkt. No. 6. The court received an initial partial filing fee of $24.00 on February 10, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The plaintiff alleges that the defendants conspired to violate his constitutional rights by interfering with his mail, and by failing to stop the interference, in retaliation for the plaintiff filing a civil rights case, filing prison grievances, writing an essay about the conditions of solitary confinement in Wisconsin prisons titled Satan's Metal Doors to Hell and filing a John Doe proceeding. Dkt. No. 1 at 5-17.

3

The plaintiff says that on November 14, 2016, he learned that someone at Green Bay had intercepted and opened a letter his trial attorney mailed to him, and had forwarded the letter to the prosecuting lawyer prior to the plaintiff's 2017 criminal jury trial. Id. at 5-6. He says he wrote a letter to defendants Warden Eckstein and Security Director Kind about the incident, but that neither responded. Id. at 6. The plaintiff allegedly filed a civil rights case about the incident, Case No. 17-cv-667,[1] and he says that during discovery in that case, he learned that defendant Christopher Stevens, who is Green Bay's mailroom security supervisor, had opened and forwarded his privileged letter to the prosecuting lawyer in his criminal case. Id.

The plaintiff alleges that after he filed Case No. 17-cv-667, defendants Stevens, Kind, Eckstein, Steven Schueler, Jay Van Lanen, William Swiekatowski and Lt. Wickman "became very hostile towards him in retaliation of [the plaintiff] exercising his right to seek redress from the violations perpetuated against him[.]" Id. at 7.

The plaintiff alleges that on June 18, 2017, he asked Stevens about missing legal mail that the plaintiff's lawyer said he had mailed to the plaintiff about two weeks earlier. Id. The plaintiff told Stevens that he knew Stevens had opened the plaintiff's privileged mail from his trial attorney and emailed the letter to the prosecuting lawyer. Id. He also says that he told Stevens that he

---

[1] On May 11, 2017, the plaintiff filed Smith v. Eckstein, et al., Case No. 17-cv-667-pp (E.D. Wis.). The case is pending before this court. The court granted the defendants' motion for judgment on the pleadings, and the plaintiff has filed a fourth amended complaint.

was missing mail his lawyer had sent him. Id. Stevens allegedly responded, "You do realize that it's in your best interest to keep your head down and stop all of your complaining? You do realize that we control all of the incoming and outgoing mail? Jailhouse lawyers never fair [sic] too well, ask around. Is that what you going to spend your time becoming?" Id. The plaintiff allegedly asked Stevens if that was a threat and if he was telling the plaintiff that if he complained and filed lawsuits about the violations of rights it would continue. Id. Stevens allegedly responded, "You smart Smith. Do the math as y'all say." Id. The plaintiff allegedly wrote to Eckstein and Kind about the incident, but they did not respond. Id. at 8.

The plaintiff says that the next day (June 19), he received a piece of legal mail from a law office that had been opened outside of his presence before being delivered to him. Id. He states that he filed an inmate complaint about the incident and that the complaint examiner spoke with Stevens because he is the mailroom security supervisor. Id. Eckstein allegedly dismissed the plaintiff's inmate complaint, even though another officer confirmed that the mail had been opened outside the plaintiff's presence before being delivered to him. Id.

The plaintiff alleges that he filed an open records request with Green Bay requesting his "DOC-240 READ MAIL LOG," a document that identifies mail that has been opened and reviewed outside of an inmate's presence. Id. The plaintiff says that, according to the log, on September 12, 2017, Stevens opened a letter addressed to the plaintiff from the state public defender's office.

5

Id. The plaintiff says that this mail was not opened when it was delivered to him, and that Stevens resealed the envelope so that the plaintiff wouldn't know he violated the plaintiff's privileged communication again. Id. at 9. The plaintiff alleges that he notified Stevens's supervisors—defendants Eckstein, Schueler and Kind—of this "continued violation," but they did not respond. Id.

The plaintiff alleges that on February 1, 2018, he learned that Stevens was holding a piece of the plaintiff's legal mail from a lawyer. Id. He says he complained, and the mail was delivered to him opened. Id. The plaintiff states that he filed an inmate complaint, and that Eckstein affirmed the complaint. Id. He says that defendant Swiekatowski told the complaint examiner that Swiekatowski had found the legal mail inside the plaintiff's mail box. Id.

The plaintiff alleges that on October 1, 2018, he informed Swiekatowski that the plaintiff's sister had sent the plaintiff copies of legal documents over a month prior and that he had still not received them, even though the post office had tracked the envelope to the prison. Id. He says that he received the documents the next day. Id. According to the plaintiff, he filed an inmate complaint about the incident, which Eckstein affirmed. Id. at 9-10. The plaintiff alleges that he spoke with Eckstein and asked him why he refused to respond to his letters regarding violations of his legal mail and Eckstein replied, "You know how to complain very well about issues. You have written to the administrator many times complaining about how I run my institution. As you see your complaints not getting you anywhere [sic]. All its doing is bringing more attention to you. Why would I reply in writing for you to use my words

6

against me in Court? File your complaints if you wish." Id. The plaintiff says that he asked Eckstein if Eckstein would intervene and stop the staff violating the plaintiff's right to have privileged communications with his lawyers, but that Eckstein told the plaintiff to return to his cell without answering the question. Id.

The plaintiff alleges that on November 5, 2018, he received mail from the Corporation Counsel that had been opened. Id. He filed a complaint about the incident, the examiner confirmed that the envelope had been opened and that defendant Pollard affirmed the inmate complaint. Id.

The plaintiff alleges that the first week of November 2018, defendant Van Lanen (supervisor of the Restrictive Housing Unit, or solitary confinement) stopped him, asked how he was doing, and then said, "So what do you think your John Doe going to do? You not as smart as many people seem to think are you? you filing comaplints [sic] and lawsuits and now you filed this John Doe. I'll be seeing you soon." Id. at 11.

The plaintiff alleges that when he was housed in Green Bay's solitary confinement unit, he wrote an essay titled, "Satan's Metal Doors to Hell" about the inhumane conditions and treatment of persons incarcerated in solitary confinement in Wisconsin prisons. Id.  According to the plaintiff, Van Lanen came to his cell one day at 6:00 a.m., with a copy of the essay and said he didn't appreciate how the plaintiff portrayed him and his staff in the essay. Id. at 12. Van Lanen allegedly said, "This is why we keep a close eye on your mail. The changes you think you're going to make not gone happen. You won't be

7

getting a copy of this essay, so you'll never see the finished copy." <u>Id.</u> The plaintiff says that his sister had a complete copy of the essay, and she returned the completed copy to the plaintiff for his approval prior to distributing it to the public. <u>Id.</u> The plaintiff alleges that Swiekatowski also spoke with him and the plaintiff asked if his essay had been sent to him in the mail and why it wasn't delivered to the plaintiff. <u>Id.</u> Swiekatowksi allegedly replied that he had received the essay, sent copies of it to Kind, the warden and the security chief in Madison, and said he doubted if the plaintiff would get it. <u>Id.</u> The plaintiff says that he told Swiekatowski that he had a First Amendment right to freedom of speech. <u>Id.</u> Swiekatowski allegedly replied, "Have you ever just wondered why your legal mail and non-legal mail are under the spotlight? You can't win SMITH. Focus on appealing your conviction." <u>Id.</u> The plaintiff alleges that Kind came to his cell to speak with him about the essay. <u>Id.</u> at 13. Kind allegedly told the plaintiff that he had read the essay and recommended that the plaintiff focus on his criminal case. <u>Id.</u> Kind allegedly said, "You in family Court regarding your children. How you think it'd look if the family Court Judge knew you was in the hole?" <u>Id.</u> When the plaintiff asked whether Kind was threatening to tell the family court that the plaintiff was in solitary confinement if the plaintiff continued complaining about prison conditions, Kind allegedly said, "Look Smith I'm not about to have a war of words with you. You'll learn that you can't beat the system. You have no power in here. Just stop with all the complaints and your time will be a lot easier." <u>Id.</u>

8

The plaintiff alleges that on November 27, 2018, defendant Katrina Paul approached the plaintiff at his cell, apologized to him and told him that Kind, Van Lanen and others were trying to get her to write him a "ticket" for threats. Id. Paul said she kept telling them that the plaintiff didn't threaten her, but they wouldn't listen. Id. The plaintiff says he asked Paul who was trying to get her to fabricate a conduct report, and that she replied, "KIND and VAN LANEN but it's more than them," and told the plaintiff that they were about to place him on Temporary Lock Up status. Id. Paul allegedly told the plaintiff that she could not stop Kind and Van Lanen, but that he should call her as a witness. Id. Paul allegedly wrote the plaintiff two conduct reports but neither constituted a threat so they could not proceed. Id. at 14. The plaintiff alleges that, as a result, Stevens wrote the plaintiff a conduct report stating that he tried to solicit defendant Paul. Id. The plaintiff states that he called Paul and Stevens as witnesses on the conduct report. Id. The plaintiff alleges that Paul provided a statement that said the plaintiff had not tried to solicit her, while Stevens lied and stated that he had spoken with Paul but couldn't recall when and what she said. Id. The plaintiff alleges that he was found guilty of soliciting staff and given ninety days solitary confinement. Id. He alleges that he told Wickman at the hearing that the conduct report was retaliatory because of the plaintiff's lawsuit and complaints against Stevens. Id. The plaintiff allegedly appealed and on December 26, 2018, Warden Pollard reversed the guilty finding because the charge was unsubstantiated. Id. at 15.

The plaintiff alleges that when he was in solitary confinement on the fabricated conduct report, Van Lanen told him, "As you see I put the handcuff's on you, they won't be placed on me. That John Doe won't result in any criminal charges I'm sure of that." Id. According to the plaintiff, the John Doe case is In the matter of John Doe, Brown County Case No. 18JD07. Id.

The plaintiff alleges that on December 12, 2018, he received mail from a law firm that had been opened and he then filed an inmate complaint. Id. at 15-16. The plaintiff also states that on December 28, 2018, his legal mail was delivered opened and he filed an inmate compliant. Id. at 16.

The plaintiff alleges that on March 7, 2019, he was directed to go to the property room and when he arrived there, defendant Vertz told the plaintiff that Vertz ran across a letter from his attorney without an envelope, as well as a DVD. Id. Vertz allegedly told the plaintiff that he didn't know who had put the items on his desk and he advised the plaintiff to "[f]ile a complaint because this shit is out of control and I don't want to be involved." Id. The plaintiff says that he filed an inmate complaint. Id.

The plaintiff alleges that the defendants acted to intimidate him to prevent him from exercising his right to seek redress in the courts and to file inmate complaints. Id. at 17. He says that the defendants' retaliation began after he filed his civil rights complaint in Case No. 17-cv-667. Id. He says that the defendants' actions were conspiratorial and "all of the referenced incidents are a continuence act in one to violate [plaintiff's] rights [sic]." Id. He says that

10

the defendants were placed on notice of his rights being violated and the supervisors did not intervene to protect him. Id.

For relief, the plaintiff seeks $250,000 from each defendant. Id. at 18. He also seeks a court order allowing him to possess his essay, Satan's Metal Doors to Hell. Id.

C.    Analysis

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff's allegations that Stevens delivered his legal mail opened and delayed the delivery of his mail, in retaliation for the lawsuit the plaintiff filed against him, states a retaliation claim against Stevens. Specifically, the plaintiff's allegations imply that Stevens withheld the mail the plaintiff spoke with him about on June 18, 2017 that was delivered to the plaintiff the next day. The plaintiff also alleges that Stevens withheld mail on September 12, 2017, and that he learned on February 1, 2018 that Stevens was holding a piece of his legal mail.

While the plaintiff says that, in addition to Stevens, Kind, Eckstein, Schueler, Van Lanen, Swiekatowski and Wickman became very hostile to him after he filed 17-cv-667, he hasn't alleged any specific incidents of retaliation

by these defendants. The plaintiff does allege, however, that he informed Eckstein, Schueler and Kind of Stevens's ongoing retaliatory actions, but they did not do anything. At this early stage, the court will allow the plaintiff to proceed against Eckstein, Schueler and Kind for failure to intervene.

While the plaintiff appears to be saying that his allegations beginning in June 2017 and ending in March 2019 describe an ongoing conspiracy among the defendants to retaliate against him, he has not pled a conspiracy. A "bare allegation" of a conspiracy does not state a claim. See, e.g., Cooney v. Rossiter, 583 F.3d 967, 970–71 (7th Cir. 2009); Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 860 (7th Cir. 1999). When a case may be "paranoid pro se litigation" and the complaint alleges "a vast, encompassing conspiracy," the plaintiff must "meet a high standard of plausibility." Cooney, 583 F.3d at 971. To plead a plausible conspiracy, the plaintiff must allege facts showing an agreement among the defendants to inflict constitutional harm. See, e.g., Ryan, 188 F.3d at 860. "Such allegations usually take one of two forms: (1) direct allegations of an agreement, like an admission by a defendant that the parties conspired; or (2) more often, circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed." Alarm Detection Sys., Inc. v. Vill. of Schaumburg, 930 F.3d 812, 827 (7th Cir. 2019).

If each correctional officer made an independent decision to retaliate against the plaintiff for his own reasons, then no conspiracy existed, because the defendants did not all agree with one another to retaliate. Cf. Twombly, 550

U.S. at 553–54 (recognizing that a series of independent decisions does not constitute a "contract, combination, or conspiracy" under the Sherman Act). The plaintiff alleges that he engaged in other actions—like filing grievances, writing the "Satan's Metal Doors to Hell" essay and filing a John Doe petition—for which the defendants retaliated against him. The plaintiff pleads no facts giving rise to a reasonable inference that the alleged ongoing retaliatory acts were the product of an agreement to retaliate rather than independent decisions by each defendant. He simply identifies several acts of alleged retaliation that occurred over the course of one and three-quarter years and speculates that they must have been the result of a conspiracy among the defendants to retaliate. See Daugherty v. Harrington, 906 F.3d 606, 612 (7th Cir. 2018) (a plaintiff may not rely on mere speculation that a conspiracy exists). The plaintiff has not pleaded direct or circumstantial facts suggesting that the alleged unlawful acts were taken because of an agreement among all defendants to retaliate against him. The court will dismiss the plaintiff's claim of conspiracy for failure to state a claim.

Finally, the plaintiff's allegations that he suffered retaliation for reasons other than filing Case No. 17-cv-667 may state retaliation claims, but he may not pursue that claim in this case. While a plaintiff may include multiple claims against a single party in the same case, a plaintiff cannot bring unrelated claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff

13

asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); George, 507 F.3d at 607; Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

The plaintiff may proceed on a retaliation claim against defendants Stevens, Eckstein, Schueler and Kind based on the three above-described instances of mail interference. The court will dismiss the remaining claims and defendants.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Pollard, Swiekatowski, Van Lanen, Wickman, Doe (DOC/DIA Security Chief), Cygan, Vertz, Paul and John and Jane Does.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Eckstein, Kind, Stevens and Schueler. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days.

14

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$326.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at the Wisconsin Secure Program Facility.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S

CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take

other required actions by the deadlines the court sets, the court may dismiss

the case based on his failure to diligently pursue it. The parties must notify the

clerk of court of any change of address. The court advises the plaintiff that it is

his responsibility to promptly notify the court if he is released from custody or

transferred to a different institution. The plaintiff's failure to keep the court

advised of his address may result in the court dismissing this case without

further notice.

Dated in Milwaukee, Wisconsin, this 23rd day of May, 2022.

BY THE COURT:

_____

HON. PAMELA PEPPER
Chief United States District Judge

16